CARLETON L. STEBBINS *vs.* CORNELIUS MILLER & another.

If land is subject to two mortgages, and "all the right in equity" of the mortgagor to redeem the same is seized and sold on execution and conveyed by a sheriff's deed, the purchaser is not estopped to contest the validity of the second mortgage.

Such purchaser may commence a suit against the second mortgagee to recover possession of the premises after the expiration of one year from the return of the execution; and the Gen. Sts. c. 103, § 48, do not apply to such a case.

In a real action brought against a married woman, to recover possession of land in which she has a right of homestead, a qualified judgment may be entered for possession subject to the right of homestead.

For the purpose of showing that a mortgage is fraudulent and void as against creditors, evidence is competent to show that in the place where the mortgagee was brought up, and where he afterwards frequently visited, making the mortgagor's house his home, he was never known to have any property or means, or to be engaged in any business.

If there is any evidence to be submitted to the jury tending to show that a mortgage was given for the purpose of delaying or defeating creditors, it is proper to refuse to instruct the jury that proof of the genuineness of the debt secured by the mortgage is sufficient to establish the validity of the mortgage.

If evidence has been introduced of a variety of circumstances, for the purpose of proving that a mortgage is fraudulent and void, the mortgagee has no ground of exception to a

refusal by the court to single out certain of them and withdraw them from the considera-
tion of the jury, although they if taken alone are not evidence of fraud; provided all the
circumstances in the case are sufficient to warrant a verdict finding fraud.

WRIT OF ENTRY, dated September 16th 1863, to recover pos-
session of land in Wales. The writ was originally brought
against William W. Thompson and Cornelius Miller. Thomp-
son afterwards died, having devised his interest in the premises
to Parthenia Miller, the executrix of his will, and the wife of
Cornelius Miller; and she was admitted to defend the suit, as
devisee and executrix.

The defendants pleaded *nul disseisin,* and relied upon an es-
tate of homestead, to which it was conceded that they were
entitled; and Parthenia Miller also relied upon a mortgage of
the premises executed by her husband to Thompson, dated Feb-
ruary 24th 1862, to secure the sum of $1400; possession having
been taken for breach of condition on the 21st of April 1862.
The validity of this mortgage was the matter in controversy.

At the trial in the superior court, before *Putnam,* J., it ap-
peared that Cornelius Miller became the owner of the premises
in 1823, and has ever since occupied them as a homestead. On
the 2d of February 1860 he mortgaged them to one Andrews,
whose administrator assigned the mortgage and the debt secured
thereby, on the 14th of June 1862, to the demandant, who on
the same day took possession for breach of condition. There
was no question as to the validity of this mortgage; but the
tenants contended that in this suit no judgment could be ren-
dered on that title, the writ alleging a seisin in fee. The mort-
gage to Thompson was also put in evidence, bearing upon it a
certificate of the taking of possession under it.

Nathan Palmer recovered judgment and execution against
Cornelius Miller, and by the return upon the execution it ap-
peared that the officer on the 17th of April 1862 " took all the
right in equity " which Miller then had of redeeming the prem-
ises. This return was made June 30th 1862. The officer sold
Miller's equity of redemption to the demandant, and his deed
recited that by virtue of the execution he had seized and taken
" all the right in equity which the said Cornelius Miller had on

the 11th day of April" of redeeming the premises, and con
veyed the same to the demandant. The discrepancy in the
statement of the date of the seizure was not relied on in de
fence.

It appeared that in March 1862 some five or six different per-
sons, including Palmer, obtained separate judgments for costs
against Cornelius Miller, upon nonsuits entered in October pre-
vious in actions brought by him against them, and the equity
of redemption was sold on Palmer's execution, to be applied
upon all. And there was evidence tending to show that at the
sale the officer announced publicly that he should sell Miller's
right to redeem the Andrews mortgage, or the property subject
to that mortgage and the homestead right; that Thompson
came there and said he had a mortgage, to which the officer re-
plied that he did not know anything about that. This evidence
was admitted against the tenants' objection.

The tenants contended that it was not open to the demand-
ant to impeach the mortgage to Thompson on the ground of
fraud; but the judge ruled otherwise.

The tenants also contended that the demandant could not set
up his levy against that mortgage, because the suit was not
brought within one year after the return of the execution; but
the judge ruled otherwise.

The evidence upon the validity of the mortgage to Thompson
was as follows: Thompson was an illegitimate child, bound to
Miller by the selectmen of Wales, and brought up by Miller.
Before coming of age he went to New York, where he was a
clerk for several years, and afterwards was clerk in a hotel in
Palmer, Massachusetts, and also in Connecticut and Illinois, and
also was engaged in some business in Pennsylvania and Iowa.
During this time he made Miller's house his home, visited there
often, and returned there whenever out of business. He never
engaged in any business in Wales. When the mortgage to him
was given he was clerk and book-keeper in a hotel in Palmer,
was about forty-one years old, and was in ill-health. Miller tes-
tified that Thompson's father left in his hands, when Thompson
was a child, $200 for Thompson's use and Thompson's mothe

$65 in property; that Thompson had at various times **paid** sums of money for him; that he had also borrowed money at various times of Thompson, and of Thompson's wife, now de. ceased; that he had never repaid any of these sums, and the amount of the same with interest, at the time of giving the mortgage to Thompson, would exceed $1400.

The demandant called several witnesses who lived in Wales and had known Thompson while he lived there under age, and upon his several returns there afterwards, and who professed to have no knowledge of his business, business habits or property elsewhere; and they were allowed, under objection, to testify that they never knew of his having any property or means, and that he had not the appearance in Wales of a man that was in any business. The demandant was also allowed, under objection, to show that the land was taxed to Miller, and the taxes were paid by him after the date of the certificate of Thompson's taking possession thereof.

Miller testified that no writing was ever made or asked for, as evidence of Miller's indebtedness to Thompson for the $200 left with Miller by Thompson's father, except that a year or two before the giving of the mortgage Thompson asked for security; that the greater part of his indebtedness to Thompson had existed from ten to twenty years, but no settlement had ever taken place, nor payment or security been offered or asked for till a short time before the giving of the mortgage; that one item of the indebtedness was seventy or eighty dollars paid for Miller twelve or fourteen years ago, yet Thompson afterwards took a note for money borrowed, without including this claim for money paid; and that Thompson paid certain moneys for Miller without being requested by anybody to do so. There was also evidence that Miller had spoken of Thompson as "the laziest man he ever knew," and that Miller had said that Thompson had been a great expense to him for his bringing up and schooling; that Miller talked of making his will and leaving his property to Thompson, but said he did not know as it would do Thompson any good, because he would not be likely to keep it long; tha Thompson in Chicago in 1858 told a witness that he did not

.ike the country and wished to get back home to Wales as soon as he could get money enough to go ; and that Miller had spoken to others of his property, and that the loan from Andrews would enable him to pay every dollar he owed, and have a few dollars left.   There was also some other evidence tending to discredit Miller's testimony.

There was no other evidence of importance to charge Thompson with participation in or knowledge of any fraudulent purpose of Miller.

The tenants, amongst other requests which were granted, requested the court to instruct the jury that if they were satisfied that Thompson's claim of $1400 was a genuine debt, and not a pretended one, there was no evidence in the case which would warrant them in finding a verdict for the demandant; but the judge refused so to charge.

The tenants also requested the court to instruct the jury that Thompson's appearance at the sale, making known the existence of his mortgage ; his entry to foreclose his mortgage; the payment of the taxes by Miller; the continued possession by Miller after Thompson's entry ; and the devise of the mortgage interest to Mrs. Miller, were all entirely consistent with the claim of a valid mortgage, and were not evidence of a fraudulent purpose in making the mortgage, and should not prejudice the tenants upon this issue.   The judge declined to give the instruction as asked for, but instructed the jury upon this point that the facts set forth in the request " may be all entirely consistent with the claim of a valid mortgage, and are not of themselves evidence of a fraudulent purpose in the making of the mortgage, nor should those facts, unless qualified by other evidence in the case, prejudice the tenants upon this issue.   They are only circumstances in the case for the consideration of the jury."

The jury returned a verdict that the mortgage was fraudulent and void ; and the tenants alleged exceptions ; and the case was reported for the determination of this court.

*J. Wells*, for the tenants.

*H. Morris*, for the demandant.

FOSTER, J.   The first question arising upon this report is whether the demandant, who was the purchaser at a sheriff's sale upon execution of Miller's equity of redemption, was entitled to contest the validity of the second mortgage upon the estate in controversy.   The first mortgage was admitted to be an unimpeachable security.   The second was disputed on the ground that it represented no genuine debt, and, if it did, was given to hinder, delay and defraud creditors.   When a creditor seizes and sells on execution a debtor's equity in mortgaged real estate, that which he obtains is the entire right of redemption in the premises which the debtor had therein liable to be taken by creditors.   There must be a mortgage to justify a sale on execution ; since unincumbered real estate cannot be so sold, but is liable only to be appraised and set off.   Therefore it was held in *Russell* v. *Dudley,* 3 Met. 147, that in the case of an estate subject to a single mortgage, the purchaser of the equity at a sheriff's sale was estopped to deny its existence and validity ; because he bought only an equity of redemption, and if there were no mortgage there could be no such equity ; and by establishing the invalidity of the mortgage he would necessarily establish the invalidity of his own deed and title.   Where, however, there are more mortgages than one, so that the debtor's estate is an equity of redemption, which the statute authorizes to be sold on execution, if any of the apparent incumbrances do not really exist ; if they are fraudulent and void, or, though once valid, have been fully paid ; the purchaser is entitled to redeem from the real incumbrances, and to contest such as are apparent only. *Gerrish* v. *Mace,* 9 Gray, 235.

We do not find in the language of the officer's return or of his deed anything to change this construction and deprive the present demandant of the right to show that the mortgage to Thompson was void as against creditors.

The question whether the parol evidence was properly admitted of what was said at the sale about the second mortgage, and whether it was announced as a sale subject only to the first becomes immaterial, because, apart from all such evidence, the sale and deed gave the purchaser the right to set aside the

second mortgage. But we by no means intend to intimate that the construction of the levy and officer's deed could be varied or affected by such testimony.

The next position taken in defence is, that the present suit should have been brought within a year after the levy, by virtue of the provisions of Gen. Sts. *c.* 103, § 48. But in the opinion of the court these provisions apply only to cases where the record title has been absolutely conveyed away in fraud of creditors, and not to facts like the present. The purchaser certainly acquired the right to redeem on some terms ; and delay to commence an action within a year is not made a ground for rendering the terms of redemption more burdensome than they would have been originally.

The homestead right of Miller in the demanded premises is no defence to the present action, either in favor of Thompson, as mortgagee in his lifetime, or of Mrs. Miller in her capacity as devisee of his mortgage interest. That right still continues, for the benefit of Mrs. Miller as widow, and a qualified judgment may be entered in favor of the demandant, establishing his title under the sheriff's deed and as against the fraudulent mortgage, but subject to the right of homestead. *Doyle* v. *Coburn,* 6 Allen, 71. *Castle* v. *Palmer,* Ib. 401.

The remaining questions relate to the issue submitted to the jury, upon which a verdict has been returned that the Thompson mortgage was fraudulent and void as against his creditors.

Evidence was admissible that in Wales, where he was born and grew up, and where his home continued to be in Miller's house, Thompson was never known to have any property or means, or to be engaged in any business.

The court properly declined to give the hypothetical instruction that, if the debt was genuine, there was no evidence warranting a verdict for the demandant. A ruling of this nature can be insisted upon, and its refusal made the subject of exception, only where upon the whole case there is no evidence to be submitted to the jury.

Certain particular circumstances in the case were singled out in the last prayer for instructions, as to which the court was

requested to instruct the jury that they were consistent with the validity of the mortgage, and not evidence of its fraudulent character. In regard to them the rulings were sufficiently favorable to the tenants. The jury were told, in substance, that these were not of themselves evidence of fraud, and, unless qualified by other evidence, should not prejudice the tenants; but that they might be considered by the jury in connection with all the other evidence in the cause. This direction was plainly right. Upon the trial of almost every issue of fraud, many items of evidence are introduced which, standing detached and alone, would be immaterial, but which in connection with others may tend to illustrate and shed light upon the character of the transaction, to show the position in which the parties stand, and their motives, conduct and relations to each other. All such circumstances are properly submitted to the jury, and inferences are to be drawn from them, not singly, but as a whole.

In the present case, no part of the evidence reported was calculated to mislead the jury, and, taken together, it well warranted their verdict.

*Judgment for the demandant on the verdict, but subject to the homestead right.*